## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

Civil Action No. 8:19-cv-246

RYAN DAVIS and ANTHONY CRANE,
      Plaintiffs

v.

SIMON CONTRACTORS, INC., d/b/a OGALLALA READY MIX & BLOCK COMPANY.
      Defendant

---

### COMPLAINT AND JURY DEMAND

---

Plaintiffs Ryan Davis and Anthony Crane, by and through their attorneys, Burg Simpson Eldredge Hersh & Jardine, P.C., hereby state the following claims against Defendant Simon Contractors, Inc., d/b/a Ogallala Ready Mix & Block Company, and allege and aver as follows:

### I.  PARTIES

1.    Plaintiff Ryan Davis is an individual residing at 29 Inland Seas Court, Lemoyne, NE 69146.

2.    Plaintiff Anthony Crane is an individual residing at 11849 Ridge Parkway, Apt. 1128, Broomfield, Colorado 80023.

3.    Defendant Simon Contractors, Inc. is a foreign corporation incorporated in Wyoming with its principal offices located at 6215 Clear Creek Parkway, Cheyenne, Wyoming 82007.  It is registered to do business in Nebraska under the trade name Ogallala Ready Mix & Block Company.  Its registered agent is the Corporation Service Company at 1821 Logan Avenue, Cheyenne, Wyoming 82001.

### II.  JURISDICTION AND VENUE

4.    Plaintiffs incorporate each and every allegation set forth above in their entirety as if set forth herein.

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  As described herein, the amount in controversy exceeds the sum of $75,000 for each Plaintiff, and is a controversy between citizens of different states.

6.    This Court has personal jurisdiction pursuant to F.R.C.P. 4(k) and Neb. Rev. Stat. § 25-536.  The Court has personal jurisdiction over Defendant by virtue of Defendant's

operations and presence in Nebraska, by its transacting business in or directed at Nebraska, and/or by otherwise purposefully availing itself of the benefits and privileges of Nebraska law by regular, continuous and systematic contacts with Nebraska, as stated herein.

7.    This Court is the proper venue pursuant to 28 USC § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within the judicial district of the United States Court for the District of Nebraska.

### III. STATEMENT OF FACTS

8.    Plaintiffs incorporate and re-allege, by reference, all other paragraphs of this Complaint as if fully set forth herein.

9.    At all times relevant, Defendant Simon Contractors, Inc. was the manufacturer and seller of the ready-mixed concrete ("Concrete") that is the subject of this complaint.

10.   Defendant is the "manufacturer" and "seller" of the Concrete as defined by Neb. Rev. Stat. § 25-21, 180 *et seq*.

11.   Defendant is now, and at all times mentioned in this complaint was, in the business of manufacturing, mixing, selling, and delivering ready-mixed concrete, including the Concrete in question, for various construction projects in Nebraska.

12.   Defendant maintains a facility in Ogallala, Nebraska, for manufacturing, mixing, selling, and delivering ready-mixed concrete, including the Concrete in question.

13.   Defendant does business in Nebraska under the trade name of Ogallala Ready Mix & Block Company, with that name registered with the Nebraska Secretary of State.

14.   Defendant targets the Nebraska market for the sale of its products, including the Concrete in question.

15.   Defendant purposefully avails itself of the privilege of conducting activities within Nebraska, given the demand of Nebraska residents for Defendant's ready-mixed concrete.

16.   Defendant actively markets and sells its products to Nebraska residents through its local facility in Ogallala, Nebraska.

17.   On April 10, 2017, Plaintiff Davis called Defendant's local facility in Ogallala, Nebraska and spoke with Defendant's employee Chad to order the Concrete.

18.   Plaintiff Davis ordered fifteen (15) yards of wet ready-mixed Concrete to be delivered to Mr. Davis's home on April 12, 2017, for a garage floor project.

19.   Plaintiff Davis ordered the fifteen (15) yards of wet ready-mixed Concrete to be delivered in two separate batches.

20.   Plaintiff Davis specifically requested that the driver bring eighteen (18) feet of concrete chute in order to deliver the Concrete toward the back of the garage.

21.   On the morning of April 12, 2017, at approximately 10 a.m., the first of Defendant's trucks arrived at Plaintiff Davis's house to pour the first ten (10) yards of the Concrete.

22.   Defendant's driver was met by Plaintiff Davis and by Plaintiff Anthony Crane, who was hired by Plaintiff Davis as an independent contractor to help spread the Concrete.

23.   Defendant's driver only brought twelve (12) feet of chute, and apologized to Mr. Davis that he was not informed of the request for eighteen (18) feet.

24.   Defendant's driver proceeded to dump the ten (10) yards of concrete in two waist-deep piles near the center of the garage.

25.   The entire ten (10) yards was dumped in approximately five (5) minutes, and Defendant's driver apologized that he did not realize the dump speed was set to "high."

26.   In order to get the wet Concrete to the back of the garage, Mr. Davis and Mr. Crane were required to shovel and rake the Concrete by hand from the large piles before it hardened.

27.   As Mr. Davis and Mr. Crane worked, Defendant's driver stood by, smoked cigarettes, and watched them.

28.   As Mr. Davis and Mr. Crane worked, Defendant's driver provided no warnings about any risk of burn injury from exposure to the Concrete.

29.   After less than one hour, at approximately 11 a.m., Defendant's first driver left.

30.   Defendant's second truck arrived at approximately 12:45 p.m., while Mr. Davis and Mr. Crane were still working to fully spread the first load before it hardened.

31.   Defendant's second driver dumped the remaining five (5) yards of concrete, while Mr. Davis and Mr. Crane continually worked to spread the first load before it hardened.

32.   After the second load of Concrete was dumped, Defendant's driver provided Mr. Davis with two sales receipts.  *See* **Exhibits 1** and **2**.

33.   Other than the sales receipts, Defendants provided Plaintiffs with no other warnings about the dangers posed by the Concrete.

34.   By the time the sales receipts were provided to Mr. Davis, he and Mr. Crane had been working in the wet Concrete for approximately three (3) hours already.

35.   Defendant's second driver left at approximately 1:30 p.m.

36.   Mr. Davis and Mr. Crane continued to work with the wet Concrete until approximately 2:30 p.m., when Mr. Crane mentioned that his ankles were itching.

37.   Mr. Crane went inside to inspect the itching sensation, and when he removed his pants he discovered burns on both of his lower legs.

38.   Mr. Crane immediately informed Mr. Davis, who then removed his pants and also discovered burns.

39.   Mr. Davis's fiancée looked online for emergency medical care for concrete burns, and learned that washing and rinsing the affected area with a mixture of water and vinegar was recommended.

40.   After washing and rinsing the burned areas with a water/vinegar mixture, Mr. Davis and Mr. Crane were driven to the emergency room in Ogallala, Nebraska.

41.   As a result of their use of the Concrete, Plaintiffs were severely injured and required emergency medical treatment for alkali burns caused by the Concrete.

42.   As a result of their injuries, Plaintiffs sought medical care, including but not limited to surgeries, physical therapy, and pain medication.

43.   At the time they were burned by the Concrete, Plaintiffs were using the Concrete in a manner and for a purpose that was intended by Defendant.

44.   At the time they were burned by the Concrete, Plaintiffs were using the Concrete in a manner that was reasonably expected by Defendant.

45.   Plaintiffs did not readily recognize any risk of harm of severe alkali burns while they were using the Concrete in a manner reasonably foreseeable by the Defendant.

46.   As the manufacturer of the Concrete, Defendant owes a duty to provide proper instructions for the use of its products, including the Concrete.

47.   As the manufacturer of the Concrete, Defendant owes a duty to warn or protect against a danger or hazard in the use or intended use of any its products, including the Concrete.

48.   Defendant's duty to warn extends to third persons who are foreseeable users of the chattel, namely Mr. Crane, and not just to those in privity of contract with the supplier of the Concrete, namely Mr. Davis.

49.   Defendant owes a duty to sufficiently warn the Concrete's users of any risk of harm not readily recognizable by an ordinary user while using the product in a manner reasonably foreseeable by the manufacturer.

50.  As the manufacturer of the Concrete, Defendant owes a duty to warn that the Concrete could result in severe alkali burns even if the user avoids direct skin contact.

51.  As the manufacturer of the Concrete, Defendant owes a duty to warn that the Concrete could result in severe alkali burns from fluids soaking through a user's clothing.

52.  Prior to their burns on April 12, 2017, Plaintiffs were unaware of the dangers posed by the Concrete, and were unaware that their use of the Concrete could result in severe alkali burns.

53.  Prior to their burns on April 12, 2017, Plaintiffs lacked knowledge of the risk of severe alkali burns from the Concrete, and relied on Defendant to deliver the product to them with all necessary warnings.

54.  Other than the two sales receipts (**Exhibits 1** and **2**), which were only provided after Plaintiffs were exposed the Concrete, Defendant provided no instructions or warnings to Plaintiffs about the Concrete.

55.  Defendant violated OSHA standards in its failure to provide a Material Safety Data Sheet (MSDS) to Plaintiffs prior to their working with the Concrete.

56.  Defendant's delivery drivers failed to inform Plaintiffs of the risk of severe alkali burns based on their observations of the Plaintiffs working in the Concrete.

57.  Had Defendant provided Plaintiffs with sufficient warnings, Plaintiffs' injuries would not have occurred.

58.  The Concrete, as manufactured and supplied by Defendant, was defective and unreasonably dangerous because Defendant failed to provide sufficient warnings about it.

59.  Defendant, as the manufacturer and supplier of the Concrete, has a duty to warn expected users, including Plaintiffs, that its product may be dangerous.

60.  On information and belief, Defendant knows or has reason to know that the Concrete was or was likely to be dangerous for the use for which it was supplied.

61.  On information and belief, Defendant had no reason to believe that those for whose use the Concrete was supplied, namely the Plaintiffs, would realize its dangerous condition.

62.  Defendant failed to exercise reasonable care to inform Plaintiffs of the dangerous condition of the Concrete, or of the facts which make the Concrete likely to be dangerous.

63.  Defendant's Concrete was unreasonably dangerous or defective because an ordinary manufacturer would not have marketed the product without warnings or instructions as to the risks and dangers involved in its use, specifically the extreme risk of severe alkali burns.

64.  Defendant breached its duties to Plaintiffs by failing to provide a sufficient warning about the Concrete.

65.  Defendant is strictly liable for its failure to provide adequate warnings about the Concrete.

66.  As a direct and proximate result of Defendant's actions and inactions, the Plaintiffs sustained severe injuries, requiring medical treatment.

67.  As a direct and proximate result of Defendant's actions and inactions, the Plaintiffs have suffered and will continue to suffer economic losses and damages including, but not limited to, past and future medical and rehabilitation expenses and out-of-pocket expenses, and past and future lost income and loss of earning capacity.

68.  As a direct and proximate result of this Incident, the Plaintiffs have and will continue to suffer in the future non-economic damages including, but not limited to, pain and suffering; loss of enjoyment of life; inconvenience; and emotional distress.  Each of the Plaintiffs' losses and damages in this category exceed $100,000.00.

69.  As a direct and proximate result of this Incident, the Plaintiffs have and will continue to suffer physical impairment and disfigurement.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Strict Products Liability**

70.  Plaintiffs incorporate and re-allege, by reference, all other paragraphs of this Complaint as if fully set forth herein.

71.  Defendant manufactured, delivered, and sold the Concrete to Plaintiffs without a sufficient warning.

72.  Defendant owed a duty to provide a warning that informed Plaintiffs of any risk of harm not readily recognizable by an ordinary user while using the product in a manner reasonably foreseeable by the manufacturer.

73.  Defendant breached its duty to provide a warning that informed Plaintiffs of any risk of harm not readily recognizable by an ordinary user while using the product in a manner reasonably foreseeable by the manufacturer.

74.  Defendant's failure to warn about the subject Concrete rendered it defective, unreasonably dangerous, and unsafe for its intended use.

75.  Defendant's breach of its duty to warn was the proximate cause of injuries so sustained by Plaintiffs, including the economic and noneconomic losses described above.

76.     Because the Concrete was not reasonably safe and Defendant failed to provide a sufficient warning, the Defendant is strictly liable to the Plaintiffs for the harm proximately caused by the Defendant's defective and dangerous product.

**SECOND CLAIM FOR RELIEF**
**Negligent Failure to Warn**

77.     Plaintiffs incorporate and re-allege, by reference, all other paragraphs of this Complaint as if fully set forth herein.

78.     The Concrete in question was manufactured, supplied, delivered, and sold by the Defendant.

79.     Plaintiffs are reasonably foreseeable users of the Concrete without prior knowledge of the dangerous nature of the Concrete.

80.     Defendant knew or had reason to know that its Concrete was or was likely to be dangerous when put to the use by Plaintiffs, for which it was made and supplied.

81.     Defendant knew or had reason to know that Plaintiffs would not realize the danger posed by the Concrete.

82.     Defendant failed to provide Plaintiffs with adequate warning of that danger.

83.     Defendant's failure to warn Plaintiffs of the danger of the Concrete was a proximate cause of the damages to the Plaintiffs, including the economic and noneconomic losses described above.

84.     Because the Defendant failed to provide an adequate warning, Defendant is liable to the Plaintiffs for the harm proximately caused by the Defendant's negligent failure to warn.

**V.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant and for relief as follows:

1.      Economic damages, including but not limited to, past and future medical expenses and out of pocket expenses, lost income, and loss of earning capacity;

2.      Non-economic damages, including but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, mental anguish, and emotional distress;

3.      Damages for physical impairment and disfigurement;

4.      All other compensatory damages caused by Defendant's actions, to be proven at trial;

5.      Pre-judgment and post-judgment interest as provided for by law;

6.      Attorney fees, costs and expenses of this action as provided for by law; and

7.      For such other and further relief as the Court deems just and proper.

## VI. <u>JURY TRIAL DEMAND</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 6th day of June, 2019.

> **BURG SIMPSON**
> **ELDREDGE HERSH & JARDINE, P.C.**
>
> *(Original signature on file at Burg Simpson*
> *Eldredge Hersh & Jardine, P.C.)*
>
> _/s/ Michael S. Burg_____
> Michael S. Burg
> 40 Inverness Drive East
> Englewood, CO 80112
> (303) 792-5595
> *Attorneys for Plaintiffs*