IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RYAN DAVIS and ANTHONY CRANE,

Plaintiffs,

vs.

SIMON CONTRACTORS, INC,

Defendant.

**8:19-CV-246**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Simon Contractors Inc.'s ("Simon's") Motion for Summary Judgment, Filing 50; Simon's motion to exclude the testimony of Plaintiffs' expert, Dr. Nathan Mayercsik, Filing 54; and Plaintiffs' motion to exclude the testimony of Simon's expert, Jay Daily, Filing 52. Plaintiffs Ryan Davis and Anthony Crane allege Simon failed to warn them of the danger of chemical burns associated with wet ready-mixed concrete Simon manufactured and delivered to their jobsite at Davis's home. Filing 1. They bring suit for strict products liability and common law negligence. Filing 1. The Court grants both motions in limine, Filing 52; Filing 54, and denies Simon's Motion for Summary Judgment, Filing 50, for the reasons stated below.

## I. BACKGROUND

Plaintiffs Ryan Davis and Anthony Crane suffered chemical burns while working with wet concrete in April 2017. Filing 1 at 4. Davis ordered the wet ready-mixed concrete to be delivered to his home in Nebraska for use on a garage-floor project from Simon, who does business in Nebraska as Ogallala Ready Mix & Block Company. Filing 1 at 2. Crane assisted Davis with the flooring project. Filing 53-2 at 1. Crane has previously worked for Davis in his snow removal business and has assisted Davis on some side jobs including installing tile floors. Filing 53-2 at 1. Davis has experience in the flooring business, both installing and selling flooring materials, but

1

testified that he has never poured concrete professionally. Filing 53-2 at 1, 5. In a recorded statement, Davis noted that he has worked with concrete in a personal capacity "on a small level . . . maybe five to ten times," Filing 53-1, though in his deposition he stated he had never poured concrete before in his life and learned what little he knew about pouring concrete only from watching others at job sites and a YouTube video explaining how to tie rebar together. Filing 53-2 at 5.

Simon delivered the wet concrete to Davis's home on April 12, 2017, in two truckloads. Filing 51 at 4. The first load was delivered around 10:00 am, and the second was delivered around 12:45 pm. Filing 51 at 3. Each load had an associated batch ticket, which contained the following warning instructing customers to "wear rubber boots and gloves" because prolonged contact with cement may cause burns:

> WARNING – **IRRITATING TO THE SKIN AND EYES**
> Contains Portland Cement. Wear Rubber Boots and Gloves. PROLONGED CONTACT MAY CAUSE BURNS. Avoid Contact With Eyes and Prolonged Contact With Skin. In Case of Contact With Skin or Eyes, Flush Thoroughly With Water. If Irritation Persists, Get Medical Attention. KEEP CHILDREN AWAY.

Filing 56-10; Filing 56-11 (bold and capitalization in original).

It is disputed when Davis was first provided with the batch tickets containing the warning. Filing 51 at 3; Filing 65 at 17-19; Filing 64-9 (Davis's fiancée, Shana Bastemeyer, noting the first driver did not leave a batch ticket). The driver of the first truck, Timothy Thompson, noticed Davis and Crane seemed inexperienced with concrete and were not wearing appropriate protective equipment for their work. Filing 64-6 at 2. He stated that he mentioned the lack of rubber boots to Davis. Filing 64-6 at 2. Simon's second driver, Chris Chase, also noted Davis and Crane seemed unfamiliar with how to handle concrete when he observed them while delivering the second load.

2

Filing 64-5 at 2. Chase also saw Davis on his hands and knees and observed concrete on his hands, though he did not see whether Davis's jeans were also soaked in concrete. Filing 64-5 at 2.

Around 2:30 pm, after both drivers had left and Davis and Crane had been at work for over four hours, Crane noticed an itching sensation on his legs, inspected them, and noticed they were burned. Filing 1 at 4. He told Davis, who then inspected his own legs and similarly discovered burns. Filing 1 at 4. Davis's fiancée, Shana Bastemeyer, found suggested first aid procedures for cement burns on the internet, and the men heeded the recommendations, washing their burns with vinegar and water. Filing 1 at 4. They then sought treatment in an emergency room. Filing 1 at 4.

Davis and Crane now allege economic and non-economic damages stemming from Simon's failure to warn them of the dangers of caustic burns associated with the wet cement Davis purchased from Simon. Filing 1. They sue under common-law negligence and strict products-liability theories of recovery. Filing 1. Davis and Crane move to exclude the testimony of Simon's expert, Jay Daily. Filing 52. Simon moves to exclude testimony from Davis's and Crane's expert, Dr. Nathan Mayercsik. Filing 54. Simon also moves for summary judgment on both of Davis's and Crane's claims. Filing 50. The Court addresses each of these motions in turn.

## II. ANALYSIS

### A. Motions in Limine

#### 1. Daubert Standard

Under Federal Rule of Evidence 702, expert opinion testimony is admissible if it will "help the trier of fact to understand the evidence or to determine a fact in issue"; it is "based upon sufficient facts or data"; and it is "the product of reliable principles and methods" which have been reliably applied "to the facts of the case." Fed. R. Evid. 702. The court must be mindful that expert opinions "can be both powerful and quite misleading." *Daubert v. Merrell Dow Pharms., Inc.*, 509

3

U.S. 579, 595 (1993). In considering admissibility, the district court's job as gatekeeper is to "ensure that all scientific testimony is both reliable and relevant." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 580). The inquiry "is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* at 758. However, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *In re Wholesome Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019) (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000)).

"A district court has great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004). To meet the reliability requirement, the proponent of an expert opinion must show "that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo*, 457 F.3d at 757-58; *see also Daubert*, 509 U.S. at 592-93 (stating that the court must assess "whether the reasoning or methodology underlying [an expert opinion] is scientifically valid"). "[C]onclusions and methodology are not entirely distinct from one another." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded." *Marmo*, 457 F.3d at 758.

To satisfy the relevance requirement, the proponent of an expert opinion must demonstrate "that the reasoning or methodology in question is applied properly to the facts in issue." *Id.* A court

is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. In exercising its gatekeeping role under *Daubert*, the court must focus "specifically on the methodology." *Synergistics, Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007).

### 2. Plaintiffs' Motion to Exclude Jay Daily's Testimony

Davis and Crane move to exclude testimony from Simon's expert, Jay Daily. Filing 52. Daily holds a bachelor's degree in mechanical engineering and has worked in engineering for over two decades. Filing 52-1 at 23-24. Among his duties as Vice President of Engineering at the Lozier Corporation from 1999 to 2018, Daily was responsible for ensuring "compliance with all local, national and industry standards for design safety and integrity." Filing 52-1 at 23. Daily has owned and operated an engineering consulting firm, providing expertise for personal injury litigation since 2018. Filing 52-1 at 23. Daily has not worked in the construction or cement industries, Filing 52-1 at 23-24, but he claims "knowledge of industry standards that would apply to Simon['s] . . . duty to warn under any written ordinances, laws, regulations, or codes," Filing 58-1 at 1. Daily's professional experience primarily concerns product design. Filing 52-1 at 23-24 (noting experience with structural and component design of military aircraft and product designs for commercial laundry and textile processing equipment, consumer web access systems, and other projects for retail applications). In his report, Daily opines that "[f]or there to be a duty to warn, there must be a code, standard or law that requires it," and "that is not the case here." Filing 52-1 at 10 (noting Occupational Safety and Health Administration regulations, the International Residential Code, and other industry standards do not require warnings). He also opines "[b]ased on a survey of batch tickets posted on the internet," that cement companies are not required to put warnings on batch tickets. Filing 52-1 at 10. He goes on to state that Davis was a "sophisticated user" of cement who

"should have known better," and that Davis's and Crane's injuries were caused by unnecessarily kneeling in cement and exacerbated by their delay in seeking medical treatment. Filing 52-1 at 10.

Davis and Crane move to exclude Daily's proposed testimony on a number of bases, including that Daily is not a qualified expert in the matters on which he opines because he lacks "knowledge, experience, or empirical research" in cement industry warnings. Filing 52 at 5-10. Simon argues that Daily is qualified by experience because interpretation of and "ensuring compliance with all local, national, and industry standards for design safety and integrity" was part of his duties as a Vice President of Engineering for over a decade.[1] Filing 57 at 3. Although Daily certainly has qualifications and experience that would qualify him as an expert on a variety of matters, the Court agrees with Davis and Crane that Simon has failed to establish that Daily possesses sufficient specialized knowledge to qualify as an expert on the issues he seeks to opine about in this case.

"A witness can be qualified as an expert by 'knowledge, skill, experience, training, or education,' and it is the responsibility of the trial judge to determine whether a particular expert has sufficient *specialized* knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001) (emphasis added) (internal citation omitted) (citing *Kumho Tire*, 526 U.S. at 156). "The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified." *Marmo*, 457 F.3d at 758. Simon has not met its burden.

---

[1] Simon also notes Davis and Crane failed to comply with the Court's local rules by not filing a brief separate from their motion to exclude Daily's testimony, by attaching exhibits to the motion rather than filing a separate index, and by omitting a certificate of compliance. Filing 57 at 11-12; *see* NECivR 7.1. Davis and Crane apologize for their noncompliance and submit that their filings still allowed Simon to substantively respond and now allow the Court to make informed rulings. Filing 61 at 8-9. The Court agrees with Davis and Crane and exercises its discretion to consider their motion in this instance. *See* NECivR 7.1(d)(4) ("Any brief not in compliance with this subsection may be stricken, with or without further notice, in the sole discretion of the court. The opposing party shall <u>not</u> file a motion to strike based on alleged noncompliance with this subsection.").

Simon effectively asserts that because Daily has significant experience interpreting unspecified industry standards relevant to product design in industries wholly unrelated to cement or construction, the Court should accept his expertise on standards and regulations in general and allow him to opine on the standards of an industry he may know little about. *See* Filing 57 at 2-3. There is no indication in Daily's affidavit or curriculum vitae that he has ever personally worked with cement or in the construction or cement industries, nor is there evidence that he supervised those who did. *See* Filing 52-1 at 23-24; Filing 58-1. There is similarly no revelation that Daily has any particular expertise with product warnings. *See* Filing 52-1 at 23-24; Filing 58-1. Daily notes he has "knowledge of industry standards that would apply to Simon," but that gives the Court woefully little assurance that any such knowledge is "sufficiently specialized . . . to assist jurors in deciding the specific issues in [this] case." *See Wheeling Pittsburgh Steel*, 254 F.3d at 715. The Court finds that Simon has not met its burden of demonstrating Daily possesses the requisite specialized knowledge to opine on the industry and legal standards relevant to this case.[2] Accordingly, Daily's proposed testimony must be excluded.

### 3. Simon's Motion to Exclude Dr. Nathan Mayercsik's Testimony

Simon moves to exclude the proposed testimony of Davis and Crane's expert, Dr. Nathan Mayercsik. Filing 54. Dr. Mayercsik is a civil engineer and holds a doctoral degree in the field from the Georgia Institute of Technology. Filing 60-1 at 51. He is employed as a senior engineer at Exponent, an engineering and scientific consulting firm. Filing 60-1 at 51. Dr. Mayercsik estimates eighty percent of his work is dedicated to consulting on cases formally in litigation. Filing 56-6 at 1. During his deposition, Dr. Mayercsik estimated he had previously authored expert

---

[2] Daily also lacks the specialized knowledge to opine on the causation of Davis's and Crane's injuries. He is not a medical professional and has no evident specialized knowledge regarding concrete or its caustic properties. *See* Filing 52-1 at 23-24.

reports in five cases; none of his previous reports dealt with cement warnings. Filing 56-6 at 1. According to his professional profile from Exponent, "Dr. Mayercsik has specialized experience in the durability and mechanical properties of construction materials, particularly cement-based materials." Filing 60-1 at 51. His profile further notes that he "has also evaluated construction injuries involving . . . cement burns." Filing 60-1 at 51. Dr. Mayercsik's publications and lectures reveal his extensive study of hardened cement and its performance as a building material. *See* Filing 60-1 at 52-53. During his deposition, Dr. Mayercsik testified that his academic training did not involve safety procedures or warnings specific to the concrete industry, though one of his undergraduate courses did provide some instruction on "how to handle chemicals" in the laboratory environment. Filing 56-6 at 3. Dr. Mayercsik spoke of his experience in the cement industry in terms of consulting "on cases that involve performance of cement-based materials and concrete elements constructed from cement," which also led to him interacting with cement-industry professionals at conferences. Filing 56-6 at 3. In the present matter, Dr. Mayercsik's report sets forth his opinions concerning "the caustic, abrasive, absorptive, and toxic properties of wet portland cement concrete"; the applicable codes and standards for delivery of ready-mixed concrete; and "the expected knowledge and standards" in the concrete industry with respect the risk of cement burns. Filing 60-1 at 8.

Simon moves to exclude Dr. Mayercsik's proposed testimony, arguing he is unqualified to offer expert opinions on the matters he discusses, that his opinions are unreliable, and that his proposed testimony would not be helpful to a jury. Filing 55. Davis and Crane disagree with each of Simon's proposed grounds for exclusion. Filing 59. Although the Court once again believes Dr. Mayercsik undoubtedly has the requisite experience and education to qualify as an expert in a

variety of matters, the Court agrees with Simon that Dr. Mayercsik offers opinions outside of his demonstrated area of expertise in this case.

Federal Rule of Evidence 702 requires that an expert witness possess "knowledge, skill, experience, training, or education" sufficient to assist the trier of fact, or to advance the trier of fact's understanding. *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006). The bar is relatively low such that "the rejection of expert testimony is the exception rather than the rule." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note). However, "the area of the witness's competence [must match] the subject matter of the witness's testimony." *Id.* at 1101.

Dr. Mayercsik has extensive experience with hardened cement and is undoubtedly qualified to opine on its performance as a building material. *See* Filing 60-1 at 51-54; *see also* Filing 55 at 8 ("There is no dispute that Mayercsik is versed when it pertains to Building Structures."). However, he was not retained to testify to the concrete's structural performance in the present case. *See* Filing 60-1 at 8 (Dr. Mayercsik's report noting his opinions concern caustic and other properties of wet concrete, applicable codes and standards for concrete delivery, and knowledge and standards concerning cement burns). Dr. Mayercsik's deposition testimony indicates he has only minimal safety training with respect to chemicals generally. *See* Filing 56-6 at 3. It is unclear how much, if at all, that training dealt with risks specific to wet cement. *See* Filing 56-6 at 3. Other than a single sentence in his professional profile indicating he has evaluated construction injuries involving cement burns, there is no indication that Dr. Mayercsik has worked with or studied the properties of wet concrete to the extent that he could be considered an expert on its dangers or the industry standards for warning of those dangers. *See* Filing 60-1 at 51-54; *see also* Filing 56-6 at 1 (Dr. Mayercsik noting none of his previous case reports dealt with cement warnings). Dr. Mayercsik's experience consulting in the concrete industry on matters involving

9

the product's performance offers little from which the Court could deduce he has expertise relevant to industry standards on the dangers of wet concrete and the need for warnings. Accordingly, Plaintiffs have not met their burden of establishing Dr. Mayercsik holds relevant expertise to assist the jury in this case. Dr. Mayercsik's proposed testimony must be excluded.

### B. Simon's Motion for Summary Judgment

Simon moves for summary judgment on both of Davis's and Crane's failure-to-warn claims, brought under strict products-liability and negligence theories. Filing 50. Simon's motion is addressed as to each claim below.

*1. Summary Judgment Standard*

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce

evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### 2. Strict Product Liability for Failure to Warn Claim

Davis's and Crane's first claim against Simon asserts the concrete provider is strictly liable for failing to warn them of the dangers of its wet cement. Filing 1 at 6-7. Simon moves for summary judgment, alleging it had no duty to warn Davis and Crane of the dangers of caustic burns, rendering any disputes of fact immaterial. Filing 51 at 3. Davis and Crane maintain that Simon, as the manufacturer and supplier of the concrete, had a duty to warn them of any known dangers. Filing 65 at 9-12. The Court finds that Davis and Crane have produced sufficient evidence for their claim to survive Simon's motion.

11

As an initial matter, the Court acknowledges that Simon's practice was to deliver a batch ticket with each load of concrete upon arrival at the location where concrete was to be poured. Filing 56-1 at 1 (Simon's driver Timmy Thomson noting "if one of the contractors or the lady that was standing there, I would have given [them] their copy of my invoice."). Simon's remaining expert, Dr. Kim Basham, acknowledges that "[i]t is common industry practice to present the concrete delivery ticket to the purchaser at the time of concrete delivery," and "[i]f the first delivery ticket was not presented to the purchaser at the time of concrete delivery, then [Simon] was remiss in its duty as the ready-mix supplier." Filing 52-5 at 11.[3] The batch tickets warned that the cement was "IRRITATING TO THE SKIN" and "PROLONGED CONTACT MAY CAUSE BURNS." Filing 56-10; Filing 56-11 (emphasis in original). However, it is disputed when Davis was first provided with the tickets. Filing 51 at 3; Filing 65 at 17-19. Davis's fiancée noted that Simon did not leave a batch ticket for the first load. Filing 64-9. If there was no factual dispute that the batch tickets containing the warning were timely provided at delivery of the wet concrete, there would be no need for the Court to address whether a warning was required under a strict-liability theory in this instance, because the warning would have been provided in the batch ticket upon delivery.

There is further evidence the drivers of the concrete trucks noticed Davis and Crane were not wearing appropriate protective equipment, noticed that they seemed unfamiliar with how to handle concrete, and saw Davis on his hands and knees working with the wet concrete. Filing 64-6 at 2. It is disputed whether these drivers made any comments to Davis and Crane regarding the potential harm to themselves that could be caused by this conduct. *See* Filing 56-1 at 2 (Thompson stating he remembered telling Davis and Crane they did not have rubber boots and "[c]oncrete can

---

[3] The Court notes that although Dr. Basham stated that it would be a mistake not to provide a batch ticket upon delivery, Dr. Basham further opined that "there are no building codes or industry standards . . . that requires a concrete delivery ticket to contain a warning statement about exposure to wet concrete." Filing 52-5 at 11.

burn your skin."); *but see* Filing 64-3 at 5 (Davis stating the first driver offered no warning).

Likewise, if there was no factual dispute regarding any oral warnings by the drivers, this also could

resolve this issue now.[4]

Given the factual disputes about whether a written or oral warning was given to Davis and

Crane,[5] the Court must evaluate whether there are questions for a jury as to whether a warning was

required to be given. Duty is not an element of a strict liability claim in Nebraska. *See Hagg v.*

*Bongers*, 589 N.W.2d 318, 328 (Neb. 1999); *see also Donahue v. Phillips Petroleum Co.*, 866 F.2d

1008, 1012 n.8 (8th Cir. 1989) ("It is somewhat misleading to characterize the obligation of a

defendant in a strict liability context as a 'duty to warn' . . . . The central inquiry is whether the

product placed into the stream of commerce by defendant is dangerous due to a lack of warning.").

> To recover against a defendant on a claim of strict liability, a plaintiff must prove
> by a preponderance of the evidence that (1) the defendant placed the product on the
> market for use and knew, or in the exercise of reasonable care should have known,
> that the product would be used without inspection for defects; (2) the product was
> in a defective condition when it was placed on the market and left the defendant's
> possession; (3) the defect is the proximate or a proximately contributing cause of
> the plaintiff's injury sustained while the product was being used in a way and for
> the general purpose for which it was designed and intended; (4) the defect, if
> existent, rendered the product unreasonably dangerous and unsafe for its intended
> use; and (5) the plaintiff's damages were a direct and proximate result of the alleged
> defect.

---

[4] Some courts have found that the caustic dangers of concrete require no product warnings. Simon notes that courts outside of Nebraska have found that the caustic properties of concrete are so widely known to ordinary users that they can be considered common knowledge, and thus require no warning from manufacturers. Filing 51 at 9-10 (citing *Baker v. Stewart Sand & Material Co.*, 353 S.W.2d 108, 111-115 (Mo. App. 1961); *Katz v. Arundel-Brooks Concrete Corp.*, 151 A.2d 731, 732 (Md. 1959); *Simmons v. Rhodes & Jamieson, Ltd.*, 293 P.2d 26 (Cal. 1956); *Dalton v. Pioneer Sand and Gravel Co.*, 227 P.2d 173 (Wash. 1951)). Other states taking up the issue more recently, as Davis and Crane note, have not found the caustic dangers of concrete to be so widely known as to alleviate the need for a product warning. Filing 65 at 10 (citing *High v. Pennsy Supply, Inc.*, 154 A.3d 341 (Pa. Super. Ct. 2017) (finding a genuine issue of material fact as to whether ordinary consumer would reasonably anticipate dangers of concrete burns); *Jowers v. Com. Union Ins. Co.*, 435 So. 2d 575 (La. Ct. App. 1983); *Young v. Elmira Transit Mix, Inc.*, 383 N.Y.S.2d 729 (N.Y. App. Div. 1976); *Sams v. Englewood Ready-Mix Corp.*, 259 N.E.2d 507 (Ohio Ct. App. 1969) (finding caustic properties of concrete are not common knowledge)). Given the limited admissible evidence presented on summary judgment, the Court cannot conclude that the caustic dangers of wet concrete are so widely known as a matter of law to present no material question of fact for a jury.

[5] Davis admits he was in charge of the job, and Crane was assisting him with it. Filing 64-3 at 2 (Davis answering "[m]e" when asked "[w]ho was in charge of this job?"). Davis's fiancée paid for the concrete. Filing 52-5 at 6.

*Hagg*, 589 N.W.2d at 328 (citing *Kudlacek v. Fiat S.p.A.*, 509 N.W.2d 603 (Neb. 1994)). "[I]t is generally the law that a product may be defective and unreasonably dangerous because the manufacturer sold the product without sufficient warnings or instructions." *Id.* at 329. "'Unreasonably dangerous' means that a product has the propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with ordinary knowledge common to the foreseeable class of users as to its characteristics." *Id.* at 329 (citing *Kudlacek*, 509 N.W.2d 603). It is generally a question of fact whether a product is unreasonably dangerous. *Id.* (citing *Rahmig v. Mosley Mach. Co.*, 412 N.W.2d 56 (Neb. 1987)). Where there is sufficient evidence for a jury to conclude a plaintiff's use of a product and resulting injuries were foreseeable, "the issue of whether a warning was required [is] properly submitted to the jury." *Hagg*, 589 N.W.2d at 329.

There is no question that Simon placed the concrete on the market and knew of the dangers associated with its caustic nature. *See* Filing 56-10 (Simon's batch ticket warning of the dangers); Filing 56-11 (same). At issue here are the questions of whether a lack of warning in this context could render the concrete unreasonably dangerous and constitute a defect, and if so, whether that lack of warning was a cause of Davis's and Crane's injuries.

In the present circumstances, the Court concludes that there is a question for the finder of fact as to whether, given Simon's knowledge of dangers associated with wet concrete and the injuries sustained by Davis and Crane, it was foreseeable that customers would not appreciate the risk absent a warning, rendering Simon's concrete unreasonably dangerous. The question of whether wet concrete is "unreasonably dangerous" under a strict liability theory is a question of fact for the jury to decide. Thus, under the present circumstances, the question of whether a warning must be provided involves a question of fact that must be determined by the jury.

14

Simon also asserts that Davis was a sophisticated user and, given his professional experience with tile grout and his past personal use of concrete, he had notice of the dangers associated with wet concrete, severing liability for Simon's alleged failure to warn. Filing 51 at 11-14. Plaintiffs argue that Davis has limited experience with concrete, and Simon had little reason to suspect otherwise. Filing 65 at 12-15. The evidence indicates that Davis had, at most, worked with concrete in a personal capacity five to ten times. Filing 53-1. In support of the argument that Davis was a sophisticated user, Simon points to a recorded statement in which Davis stated that he once poured a twelve by fifteen feet patio at his home, and noted it was approximately a half a truckload, but that fact and Davis's other experience with wet concrete is disputed. *Compare* Filing 51 at 13 ("Davis' statement proves that he had previously worked with concrete on 5-10 different occasions" including a job requiring "half a truckload of concrete"), *with* Filing 65 at 13 (noting Davis's inexperience with concrete and stating "[d]espite Defendant's attempts to categorize Mr. Davis as experienced in concrete based on his prior work experience, that too is false and remains heavily contested."). Additionally, testimony from both of Simon's concrete delivery drivers reveals that Davis and Crane appeared to be inexperienced and ill-prepared to work with concrete. Filing 64-4 at 2 (Thompson stating "it was rather obvious they were unprepared and didn't have a clue what they were doing"); Filing 64-5 at 2 (Chase answering affirmatively when asked "they were unfamiliar with how to handle concrete and were do-it-yourselfers, correct?").

Therefore, the question of whether Davis was a sophisticated user requires analysis of facts that are in dispute. The Court is unable to conclude whether Davis was a sophisticated user of wet concrete as a matter of law.

*3. Negligent Failure to Warn Claim*

15

Davis and Crane also assert a failure-to-warn claim based in common-law negligence. Filing 1. Simon moves for summary judgment relying heavily on arguments that it had no duty to warn Davis and Crane of the dangers associated with wet concrete. Filing 51. Simon argues that the caustic dangers of wet concrete are so widely known that it would be unreasonable to require a warning. Filing 51 at 9-11. Simon also argues that Nebraska's "sophisticated user" defense applies and that there is no industry standard requiring it to warn concrete purchasers of caustic dangers. Filing 51 at 11-17. Davis and Crane contend Simon was under a duty to warn them of the dangers of concrete burns, that the industry standard was to provide such a warning, and that Nebraska's sophisticated-user defense does not apply to them. Filing 65 at 8-16. The Court finds that there are material questions of fact for a jury to decide concerning Plaintiffs' negligence claim.

In Nebraska, "[i]n order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages." *A.W. v. Lancaster Cnty. School Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010). "The duty in a negligence case is to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Id.* "[I]t is for the fact finder to determine . . . whether or not the evidence establishes a breach of that duty." *Id.* "[A]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." *Id.* at 915.

Under Nebraska law, a party must "conform to the legal standard of reasonable conduct in the light of the apparent risk." *Desel v. City of Wood River*, 614 N.W.2d 313, 318 (Neb. 2010) ("[I]n negligence cases, the duty is always the same . . . ."). Simon knew of the caustic dangers of wet concrete; what remains to be determined is whether or not providing a warning before delivering the cement is "reasonable conduct." Simon notes that no party has identified a binding industry standard requiring a warning be delivered with wet concrete. Filing 51 at 14-17. However,

industry standards and codified legal obligations are not the sole bases for the standard of reasonable care, though they can be evidence of what is reasonable in a given situation. *See Desel,* 614 N.W.2d at 316 (finding the trial court did not err in allowing a jury to find a city was negligent for failing to keep roots from entering a sewer line despite the absence of an industry standard, regulation, or ordinance dictating the city's maintenance requirements).

One of Simon's employees estimated so-called do-it-yourselfers made up a significant portion of Simon's business. Filing 64-6 (estimating twenty-five percent of deliveries were to people with "little or minimal" experience with concrete). These do-it-yourselfers may not have the experience or knowledge to understand the harm that might be caused to them by spending hours wading in two truckloads of wet cement. Given this fact and the evidence in the record, there is a question for the jury whether under Nebraska negligence law, Simon breached its duty of reasonable care if Simon did not provide a warning to Davis and Crane.

If Simon indeed delivered its batch sheet with its warning to Davis or his agent upon delivery of the first load, as was its practice, Simon would have met any duty to warn of the dangers of wet concrete under Nebraska negligence law. However, as noted previously, whether the batch ticket was timely delivered, along with whether any other oral warnings were provided by the concrete truck drivers, remains in dispute. It is also for the finder of fact to determine whether Davis's and Crane's injuries were foreseeable and thus whether Simon acted reasonably in the face of the risk associated with the cement it sold to Davis.

Simon also asserts a "sophisticated user" defense, arguing that Davis's and Crane's experience working with cement alleviates any duty to warn them of the caustic danger associated with Simon's product. Filing 51 at 11-14. In Nebraska, "there is no duty to warn if the user knows or should know of the potential danger, especially when the user is a professional who should be

aware of the characteristics of the product." *Vondra v. Chevron U.S.A., Inc.*, 652 F. Supp. 2d 999, 1006 (D. Neb. 2009) (citing *Strong v. E.I. DuPont de Nemours Co., Inc.*, 667 F.2d 682, 687 (8th Cir. 1981) (applying Nebraska law)); *see also Erickson v. Monarch Indus., Inc.*, 886 347 N.W.2d 99, 108 (Neb. 1984) (internal quotations omitted) (noting "warning of a product's defects is unnecessary where the supplier of the product has reason to believe that those who will use it will have such special experience as will enable them to perceive the danger").

For the same reasons outlined in Section II-B-2 above, there are questions of fact as to whether Davis knew or should have known of the potential dangers associated with laying two truckloads of wet concrete. There are therefore material questions of fact that preclude summary judgment on Davis and Crane's negligent failure-to-warn claim.

### III. CONCLUSION

For the reasons stated herein,

IT IS ORDERED

1.  Plaintiffs' motion to exclude the testimony of Jay Daily, Filing 52, is granted;

2.  Defendant's motion to exclude the testimony of Dr. Nathan Mayercsik, Filing 54, is granted; and

3.  Defendant's Motion for Summary Judgment, Filing 50, is denied.

Dated this 12th day of April, 2021.

BY THE COURT:

Brian C. Buescher
United States District Judge

18